

JUDGE BATTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

 v.

MICHAEL A. STUMMER,

     Defendant.



Case No. _____

## COMPLAINT

Plaintiff United States Securities and Exchange Commission ("Commission")

alleges as follows:

## SUMMARY

1.   This action involves illegal trading in the securities of NASDAQ-listed Ryan's

Restaurant Group (RYAN) by Michael A. Stummer (Stummer) in the days leading up to the

July 25, 2006 announcement that a private entity had reached an agreement with RYAN to

purchase all outstanding RYAN shares for a substantial premium over RYAN's then publicly-

traded price. Four days before the announcement, Stummer deceptively gained unauthorized

access to the computer server of the private equity firm that was advising the acquiring

company in the transaction and illicitly obtained material information pertaining to the offer.

Stummer then used that information to purchase 5,500 RYAN shares. Thereafter, on July 25,

2006, the date the transaction was publicly announced, the price of RYAN shares closed up 40

percent from the prior day's close. Just after the announcement Stummer sold his entire

position and realized profits in excess of $22,000.

2.      By engaging in the conduct described above, Stummer violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b5] promulgated thereunder, and unless enjoined will continue to engage in transactions, acts, practices, and courses of business similar to those alleged in this complaint.

3.      The Commission seeks a final judgment enjoining Stummer from future violations alleged herein, ordering Stummer to pay full disgorgement of his ill-gotten gains plus prejudgment interest thereon, and ordering Stummer to pay a civil monetary penalty equal to the amount of his ill-gotten gains.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

5.      Stummer made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, practices, and courses of business alleged herein, certain of which occurred within the Southern District of New York. Venue is proper in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].

## THE DEFENDANT

6.      Defendant Michael A. Stummer (Stummer), age 40, is a United States citizen who resides in Columbus, Ohio. At all relevant times, Stummer was a self-employed day trader, who traded upwards of 30-40 securities a day. In addition, Stummer was employed as a part-time business manager at a medical center. Stummer is related through marriage to

one of the directors of the private equity firm that purchased RYAN.

## RELATED ENTITIES

7.      Ryan's Restaurant Group (RYAN), prior to the time it was privately purchased, was listed on the NASDAQ National Market and headquartered in Greer, South Carolina. RYAN was a leading restaurant company operating more than 340 restaurants in the Southern and Midwest United States.

8.      Caxton-Iseman Capital, Inc. (Caxton) was formed in 1993 and is a New York-based private equity firm.  One of Caxton's principals is the brother-in-law of Stummer. Caxton's current portfolio of companies includes Buffets Holdings, Inc. (Buffets), a company that owns and operates a chain of buffet restaurants, which affiliates of Caxton acquired in October 2000. Stummer's brother-in-law is also a director of Buffets. On July 25, 2006 Buffets announced an agreement to acquire RYAN's and a plan to merge RYAN's into Buffets.

## FACTUAL ALLEGATIONS

### Background

9.      During the period from May 2005 through February 2006, principals of Caxton and their investment bankers met with representatives of RYAN to discuss a possible business combination.

10.      On March 21, 2006, Caxton, on behalf of Buffets, signed a confidentiality agreement with a third-party investment banking firm, on behalf of RYAN, for the purpose of performing due diligence on RYAN.

11.    During all relevant times, Stummer's brother-in-law was one of Caxton's principal decision makers with respect to Caxton's efforts to combine Buffets with RYAN. He was also one of the principal architects of the financing of the transaction.

12.    On April 7, 2006, Caxton, through Buffets, submitted to RYAN a preliminary, non-binding indication of interest. On April 24, 2006, principals of both RYAN and Buffets, including Stummer's brother-in-law, met face-to-face to discuss a possible transaction.

13.    From April 2006 through July 25, 2006, the date of the public announcement of the RYAN acquisition, Stummer's brother-in-law, as a principal of Caxton and director of Buffets, actively participated in all facets of the RYAN acquisition by attending key meetings in which material, non-public information about the RYAN transaction was discussed. During this time Stummer's brother-in-law also participated in the preparation of documents pertaining to the transaction.

### Stummer Fraudulently Acquires Material, Non-Public Information About RYAN Merger and Buys RYAN shares

14.    From Thursday, July 20, 2006 through Monday, July 24, 2006, Stummer and his family visited his brother-in-law and were guests in his brother-in-law's New York home.

15.    Prior to the weekend visit, Stummer had monitored rumors on the Internet that Caxton, through Buffets, might be interested in acquiring RYAN.

16.    On Friday, July 21, 2006, at 9:30 am, while his brother-in-law was away from the home, Stummer snuck into his brother-in-law's bedroom office and decided to research RYAN on the computer in the office.

17.     Stummer did not ask or receive permission to use the bedroom office computer and never informed anyone afterward that he had used it.

18.     Without permission Stummer gained illicit access to his brother-in-law's computer by correctly guessing the password.

19.     The office computer was linked directly to Caxton's computer server. Thus, after he logged onto the computer, and bypassed the security system, Stummer deceivingly entered Caxton's network as if he were his brother-in-law and had authorized access.

20.     In addition to performing generic internet research on the rumored acquisition, Stummer entered Caxton's private server posing as his brother-in-law and opened several of his brother-in-law's emails. Certain of those emails related to the RYAN acquisition and contained, among other things, the Caxton-Buffets confidentiality agreement, an enterprise value calculation of RYAN performed by an investment banker hired by Caxton, and a June 2, 2006 confidential memorandum from Caxton to RYAN proposing a 45 day negotiation period in advance of a possible transaction to combine business operations.

21.     Stummer knew that the documents he accessed on Caxton's server were confidential and non-public.

22.     Based on the information he obtained from accessing Caxton's server, Stummer placed orders for 5,500 RYAN shares on Friday, July 21 and Monday, July 24, 2006.

**Stummer Sells RYAN Shares Immediately After Merger Announcement**

23.     On Tuesday, July 25, 2006, at 6:35 am Buffets and RYAN publicly announced an $876 million merger agreement pursuant to which Buffets would purchase all of the

outstanding shares of RYAN. As part of the deal, RYAN shareholders would receive $16.25

per share in cash. On the day of the announcement, the closing price for RYAN shares was

$15.70, an increase of 40 percent from the prior day's close.

24.    Immediately after the announcement Stummer sold his entire position in

RYAN for a total profit of $22,351.17.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act
**[115 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [117 C.F.R. § 240.10b5]**

25.    Paragraphs 1 through 24 are re-alleged and incorporated herein by

reference.

26.    Stummer engaged in fraudulent, deceptive or manipulative acts or practices

in connection with the purchase and sale of RYAN's securities by (i) deceptively logging

on to the brother-in-law's computer, (ii) accessing, without authorization, the Caxton server

as if he were his brother-in-law, (iii) improperly accessing his brother-in-law's work emails

pertaining to the impending acquisition of RYAN which were stored on the Caxton server,

and (iv) using the material, nonpublic information he learned from those emails to

purchase RYAN securities.

27.    By reason of the foregoing, Stummer violated Section 10(b) of the

Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.15b5].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court enter a final

judgment:

(A)    Permanently enjoining Stummer, his agents, servants, employees, attorneys,

and all persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, from future violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b5];

(B)    Ordering Stummer to disgorge the ill-gotten gains derived from the unlawful trading alleged herein, plus prejudgment interest on that amount;

(C)    Imposing a civil penalty against Stummer equal to his illegal trading profits; and

(D)    Granting such other relief as this Court deems just and proper.

Dated: April  17 , 2008

Respectfully submitted,

Mark A. Adler  (MA 8703)
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4030
Telephone: (202) 551-4402 (Adler)
Facsimile: (202) 772-9245 (Adler)
Email: Adlerma@sec.gov

Attorney for Plaintiff

Of Counsel:
Cheryl Scarboro
John Reed Stark
Thomas Sporkin
Irene Gutierrez
Merritt A. Gardiner